SEXTON, J. (Ad Hoc),
dissenting.
| ,At issue here is the question of whether the plaintiff sufficiently countered the defendant’s summary judgment contention that the plaintiff, could not prove that it lost profit because of the failure of the defendant to honor its first refusal con *1175 tract with the plaintiff. There is no issue at this time with the regard to the question of first refusal. The sole question is that of the proof of any profits.
I suggest that to avoid summary judgment the trial court and the majority seem to want the plaintiff to prove these damages to a certainty. Such proof is not even the standard on the merits. As a general rule lost profits are recoverable on an action for breach of contract where the amount can be proved with reasonable certainty. These profits may not rest on speculation or conjecture unless direct evidence is unavailable to establish this element of damage. Customary or foreseeable profit may be resorted to as a measure of damage where there is no direct evidence of the exact extent of loss. However, broad latitude is given in proving loss profits because this element of damages is often difficult to prove and mathematical certainty or precision is not required. ScenicLand Const. Co. LLC. v. St. Francis Medical Center, Inc. 41,147 (La.App.2d Cir.7/26/06) 936 So.2d 247. When damages are insusceptible of precise management, much discretion is left to the trial court for the reasonable ascertainment of these damages. La. C.C. art. 1999.
I have no issue with the statement of the majority that the two bank presidents’ depositions indicate that the plaintiff could not have obtained financing for the remaining 76 trucks. However, that is not the question.
|2The deposition of Mr. McDaniel, the Chairman and CEO of Jackson Bank, and the affidavit of Ms. Teek, the vice president of that bank, indicates that there was somewhere between $50,000 and $75,000 available in plaintiffs line of credit with that bank. The president of the Hodge Bank who financed the last three trucks of the 10 which plaintiff originally managed to buy in March of 1999 testified that this bank would likely have financed at least another 10 trucks. The president further testified that they might possibly finance another 20 but they would have to look very hard at any amount over 10.
Of the 10 trucks actually bought, the plaintiff testified that he made $13,800 on each of the three pumpers and $19,600 on each of the five tankers. The record reflects that the plaintiff had funds available to him at the lending institutions, though probably not sufficient funds to finance the full 76 of the trucks. It further contains the plaintiffs testimony that he had made profits on the initial transaction.
Thus, the plaintiff presented clear evidence of making a profit selling these trucks previously. The bank officers indicated the significant possibility of financing being available to purchase some of the trucks. While probably not able to prove lost profit on all the trucks, this record reflects plaintiff should have the opportunity to show a lost profit on some of the trucks. Thus, I see significant questions of material fact, and respectfully dissent.